| Mary A. Parker vs. Mary Oliver | Eq. No. 9487. |

June 17, 1931.

BLODGETT, P. J. Heard upon bill, answer and proof.

Peter Hynes died seised of certain real estate in Central Falls, described in the bill. Hynes, by his will duly probated, left $15 to his daughter, the complainant, and the rest of his estate, real and personal, to his "present wife," the respondent.

Peter Hynes and the respondent procured a license and were married under same December 21, 1910, the respondent representing herself as a widow.

Respondent, while living in England, was married to John W. Oliver at Dukenfield, England. They lived together as man and wife. Respondent claimed that her husband failed to support her and that an action for non-support was brought against said Oliver in England and he was ordered to pay a certain sum weekly to her; that said Oliver failed to pay this and abandoned her and that for a long period she was unable to locate him.

There appears upon the record a decree from the Petty Sessional Division of Dukenfield, showing said Oliver had deserted his wife and that his wife was no longer bound to cohabit with him, giving the custody of certain minors to his wife and ordering him to pay a certain sum for their support, and dated January 18, 1906.

There is also a deposition of John W. Oliver in the record which discloses him to have been more or less a wanderer from place to place; that he paid the allowance ordered for five months and nothing afterwards; that he had not seen his wife since some time in 1906; that he knew she came to America in 1907 but that he had heard nothing from her or written her since 1906.

Since the commencement of this present action said Mary Oliver has deceased, leaving a will duly probated, and her executor, Andrew Towey, has taken upon himself the defense of this case.

There further appears on the record a deposition in perpetual memory of said Mary Oliver. In this deposition she says, relative to Peter Hynes, that she told him she could not marry him as she did not know whether her husband was living or not; that Hynes told her to go to a lawyer and see if they could find out; that she went to Lawyer Quinn; that she believed her former husband was dead; that she told Peter Hynes everything in regard to her marriage and her family and never attempted in any way to deceive him.

The fifth paragraph of the bill alleges that respondent (Mary Oliver) in order to entitle her to certain real estate of said Hynes, then and there fraudulently represented to him that she was a widow and that her husband was dead.

The remaining paragraphs of the bill contain reiterations of the same allegations, except the twelfth which alleges that said Mary Hynes mortgaged the said real estate to the Industrial Trust Company.

The bill asks that complainant, Mary Parker, be declared the owner of said real estate, and that she may be declared entitled to all the rents and profits of the same since the death of her father, Peter Hynes, and that, although the bill admits the validity of said mortgage to the Industrial Trust Company, said Mary Oliver be ordered to turn over to complainant the proceeds of said mortgage.

The real ground for the relief asked for is that Mary Oliver fraudulently represented to Peter Hynes that she was unmarried as her former husband was dead, and that he, said Peter Hynes, relying on this fraudulent representation, married her.

There is no allegation that Mary Oliver influenced him, said Peter Hynes, to make a will of all his property to her. This he did and it is the only way that she obtained any title to the property. In this will, dated October 3, 1912, he expressly mentions his daughter, Mary Parker, and leaves her a bequest of $15, and bequeathed all the rest of his property, real and personal, to his *"present wife."* No question is raised that the words "present wife" meant Mary Oliver.

Does the evidence sustain any fraudulent representation of Mary Oliver to Peter Hynes? She came to this country in 1907. She was married to Peter Hynes in 1910. In those three years she had heard nothing from her former husband. This is evidenced by her own testimony and corroborated by the deposition of her former husband taken in England. There is no evidence to contradict her own testimony that she told Peter Hynes long before her marriage that she had been married in England to John W. Oliver and that she did not know whether said Oliver was alive or dead, and that acting under his advice she consulted an attorney, one Peter Quinn, now deceased, and that she honestly thought her former husband, John W. Oliver, was dead. There is no record evidence that she was legally separated from said John W. Oliver.

The Court is of the opinion from the evidence that at the time she entered into the marriage relation with Peter Hynes she had an honest belief that said John W. Oliver was dead. The evidence clearly shows her to have been a hard-working woman and a woman of good moral character. There is not a scintilla of evidence against her reputation. The Court is of the opinion that said Peter Hynes was not deceived by any misrepresentations made to him by Mary Oliver when he

entered into the marriage relation with her, or that these misrepresentations induced him to enter into such relations, and that complainant has failed to sustain the burden of proof.

A decree may be entered dismissing the bill.

For complainant: Thomas L. Carty.

For respondents: McGovern & Slattery, Huddy & Moulton.